UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

**JOSE C. RUIZ, CRUZ EDUARDO RUIZ, and
LUKASZ ZAJKOWSKI, Individually and on
Behalf of All Similarly-Situated Employees,**
                    *Plaintiffs,*

v.                                                                **C.A. NO. 21-11722**

**NEI GENERAL CONTRACTING, INC.;
DELTA DRYWALL AND FRAMING LLC;
JOSEF RETTMAN; AND DAVID ADAM
VILLANUEVA,**
                    *Defendants.*

### INDIVIDUAL, CLASS, AND COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs Jose C. Ruiz, Cruz Eduardo Ruiz, and Lukasz Zajkowski, individually and on behalf of all similarly-situated employees, by and through their counsel of Muller Law LLC, do hereby state and allege as follows:

### INTRODUCTION

1.      Construction workers Jose C. Ruiz, Cruz Eduardo Ruiz, and Lukasz Zajkowski, and their many similarly-situated hourly-paid co-workers (together, "Plaintiffs"), worked for Defendants on a government-supported project building low-cost senior housing at the Mary D. Stone property in Auburn, Massachusetts between September, 2020, and August 21, 2021. During the project, Defendants willfully and knowingly failed to pay a large group of Plaintiffs any wages for five weeks of hard work.  Defendants also refused to pay overtime premiums to the large group of Plaintiffs who worked overtime hours, willfully and knowingly misclassified all Plaintiffs as independent contractors rather than employees, denied them paid sick leave, and

created obstacles to access government benefit programs designed to assist Massachusetts employees, including unemployment insurance, workers' compensation, and paid family and medical leave.

2.      After some Plaintiffs complained about not being paid and others threatened to have a mechanics' lien filed on the property, Defendants retaliated by refusing to pay wages to Plaintiffs and terminating all Plaintiffs working on the project.

3.      Defendants exploited the Plaintiffs, most of whom were immigrants with little knowledge of, or ability to protect, their rights.

4.      Plaintiffs bring this action seeking payment of their unpaid wages, overtime premiums, damages resulting from misclassification as independent contractors, back wages, front wages, and other damages due to them under Federal and Massachusetts law.

## JURISDICTION AND VENUE

5.      Subject matter jurisdiction over this action is conferred on this Court under the provisions of 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

6.      This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a), as such claims form part of the same case or controversy and arise out of a common nucleus of operative facts as the Fair Labor Standards Act ("FLSA") claims alleged in this Complaint.

7.      Venue in this district is appropriate pursuant to 28 U.S.C. § 1391 because the events or omissions giving rise to the claims herein occurred in this district, primarily at construction sites in Auburn, Massachusetts.

## THE PARTIES

8.      Plaintiff Jose C. Ruiz is a resident of Lawrence, Massachusetts.

9.      Plaintiff Cruz Eduardo Ruiz is a resident of Lawrence, Massachusetts.

10.     Plaintiff Lukasz Zajkowski is a resident of Lynn, Massachusetts.

11.     Defendant NEI General Contracting, Inc. ("NEI") is a Massachusetts corporation, with its primary headquarters in Randolph, Massachusetts.

12.     Defendant Delta Drywall and Framing LLC ("Delta Drywall") is a Massachusetts limited liability company, with its primary headquarters in Needham, Massachusetts.

13.     Defendant Josef Rettman is the President, Treasurer, Secretary, and Director of NEI (together with NEI, the "NEI Defendants"), and works in Massachusetts.

14.     Defendant David Adam Villanueva is the Manager of Delta Drywall (together with Delta Drywall, the "Drywall Defendants") and, on information and belief, is a resident of Massachusetts.

15.     Each Plaintiff was employed by Defendants in Massachusetts within the applicable statute of limitations period and is entitled to the rights, protection and benefits provided under the FLSA and Massachusetts law.

## FACTUAL ALLEGATIONS

**A.      Auburn Senior Housing Projects Background**

16.     In or about March, 2017, the Town of Auburn, Massachusetts sought proposals for the conversion of the Mary D. Stone school (the "Project") and the Julia Bancroft school (the "Bancroft Project") into senior housing.

17.     Later that year, Auburn awarded both the Project and the Bancroft Project (together the "Auburn Senior Housing Projects") to Pennrose Properties, LLC ("Pennrose").

18.     At that time, as stated in Auburn's 2017 Comprehensive Housing Plan, the development costs for the Auburn Senior Housing Projects were projected to be over $35 million dollars.  According to Pennrose, federal, state, and local governments provided crucial support for the projects.  Pennrose emphasized that critical funding for the project was provided by federal and state Low Income Housing Tax Credits through the Department of Housing and Community Development and State Historic Tax Credits through the Massachusetts Historic Commission and Secretary of State.  Pennrose also partnered with equity and debt partners, including Dorfman Capital, BlueHub Capital, Citizens Bank, and Massachusetts Housing Partnership, to finance the Auburn Senior Housing Projects.

19.     Pennrose hired NEI as the General Contractor on the Auburn Senior Housing Projects.

20.     According to the NEI website, NEI was founded in 1998 by Kevin B. Fish, its current Vice President, on the principles of integrity, experience, and diligence, and provides general contracting and construction management services.

21.     NEI, in turn, hired Delta Drywall to perform significant work on the Auburn Senior Housing Projects, including layout, taping, framing, drywall, and other similar work for both the Mary D. Stone and Julia Bancroft properties.

22.     On information and belief, at all relevant times, Defendant Rettman, as President of NEI, exercised control over the compensation policies and practices of NEI.

23.     At all relevant times, Defendant Villanueva had a significant ownership interest in Delta Drywall, had sole control of the day-to-day operations of Delta Drywall, and had sole control over the compensation policies and practices implemented by Delta Drywall.

4

**B.      Phase I: Plaintiffs Begin Work on the Project**

   **i.      Work Performed by Plaintiffs**

24.     The Drywall Defendants began employing one or more Plaintiffs to work on the Project beginning in or about September, 2020.

25.     The Drywall Defendants directed Plaintiffs to work on the Project from approximately September, 2020, through the time the Drywall Defendants announced their departure from the Project in or about June, 2021 ("Phase I").

26.     All of the Plaintiffs, including all three named Plaintiffs, performed construction work, including layout, taping, framing, and/or drywalling, on the Project.

27.     Plaintiff Zajkowski also had additional responsibilities as foreman.  The NEI Project Manager on the Project, Joe Cavallaro ("NEI PM"), and the NEI superintendents on the Project ("NEI Superintendents"), provided Plaintiff Zajkowski with instructions to pass on to the other Plaintiffs.  The NEI Superintendents also provided instructions directly to other Plaintiffs on a regular basis when Plaintiff Zajkowski was absent from the jobsite.

28.     The NEI Superintendents and the NEI PM directed the type of work, the order of the tasks performed, the specific location of the work, and the amount of time to spend on each task that the Plaintiffs performed each week.

29.     The NEI Superintendents and the NEI PM directed the Delta Defendants to increase the number of workers on the Project based on the work NEI expected to be completed.

30.     The NEI Superintendents and the NEI PM directed what days the Plaintiffs should work and whether the workers should stay late or work on Saturdays.

31.     Plaintiffs used equipment paid for by both the Delta Defendants and NEI, including, but not limited to, scaffolding, gang boxes, and taping tools.

32.     Both the Delta Defendants and NEI purchased the materials Plaintiffs required and used to perform their work on the Project, including, but not limited to, taping materials, metal framing, screws, and drywall.

**ii.     Plaintiffs' Compensation During Phase I**

33.     All Plaintiffs were paid on an hourly basis throughout the course of the Project.

34.     During Phase I, Plaintiffs usually were paid wages based on two-week pay periods approximately six days after the end of the two-week pay period.

35.     During Phase I, the Drywall Defendants and NEI sometimes required some Plaintiffs to work more than eight-hour shifts and on Saturdays.

36.     During Phase I, the Drywall Defendants and NEI sometimes required some Plaintiffs to work more than forty hours in a workweek ("Overtime Hours").

37.     On information and belief, the Drywall Defendants and NEI knew that some Plaintiffs were sometimes working Overtime Hours.

38.     Plaintiffs were not paid at least time and a half their regular hourly rate ("Overtime Premium Pay") for Overtime Hours they worked on the Project during Phase I.

39.     On information and belief, Defendants knew that Plaintiffs were not paid Overtime Premium Pay for Overtime Hours they worked on the Project.

40.     During Phase I, some Plaintiffs did not receive any wages for some hours they worked.

41.     During Phase I, the Drywall Defendants sometimes paid Plaintiffs late, one or more days after their regular pay date.

42.     During Phase I, Plaintiffs were paid wages via Delta Drywall company checks rather than payroll checks and did not receive pay stubs with their wage payments.

43.     During Phases I, taxes were not withheld from the wages paid to Plaintiffs.

44.     During Phase I, payroll taxes were not paid by or on behalf of Delta Drywall or NEI in connection with wages paid to Plaintiffs.

45.     During Phase I, contributions were not made under the Massachusetts Paid Family and Medical Leave Law, M.G.L. c. 175M, in connection with wages paid to Plaintiffs.

46.     During Phase I, contributions were not made by or on behalf of Delta Drywall or NEI to workers' compensation insurance on behalf of Plaintiffs.

47.     During Phase I, Plaintiffs were not notified by or on behalf of Delta Drywall or NEI of their rights to earn paid sick leave.

48.     During Phase I, Plaintiffs were not provided with any earned paid sick leave by or on behalf of Delta Drywall or NEI.

**B.      Phase II:  NEI Assumed Full Control of Plaintiffs**

**i.      NEI Stepped In After Delta Defendants Abandoned Project Obligations**

49.     On information and belief, in or about June, 2021, the Delta Defendants decided they no longer wanted to be involved with the Project.

50.     In or about June, 2021, NEI was notified that the Delta Defendants no longer wanted to be involved with the Project and would stop paying Plaintiffs for work on the Project.

51.     In or about June, 2021, the Delta Defendants stopped paying Plaintiffs for their work on the Project.

52.     In or about June, 2021, the NEI PM and Antonio Tenriero, NEI Project Executive ("NEI PE"), arranged for the Delta Defendants' project manager, Pinto, and Plaintiffs to continue working on the Project after learning that the Delta Defendants were not going to pay Plaintiffs for work on the Project.

53.     In or about June, 2021, the NEI PM and the NEI PE promised that NEI would pay Pinto and the Plaintiffs on the same terms as they had been paid during Phase I for their continued work on the Project after the Delta Defendants decided to abandon the Project through the end of the Plaintiffs' work on the Project ("Phase II").

54.     On information and belief, Defendant Rettman was aware of and approved or ratified NEI's promise to pay Plaintiffs for their continued work on the Project after the Delta Defendants stopped paying Plaintiffs.

55.     In or about June, 2021, the NEI PM and the NEI PE directed Plaintiff Zajkowski to maintain records of the hours Plaintiffs worked on the Project.

56.     In or about June, 2021, the NEI PM and the NEI PE directed Pinto to send to NEI the Plaintiffs' employment records, including the names of Plaintiffs who worked on the Project, their hourly rates, and the time each worked each week ("Work Records") so NEI could pay the Plaintiffs.

57.     In or about June, 2021, the NEI PM and the NEI PE directed Pinto to gather and forward to NEI waivers signed by each Plaintiff ("Signed Waivers") acknowledging each wage payment by NEI to the Plaintiff.  The Signed Waivers, *inter alia*, stated the dollar amount the Plaintiff received and the Plaintiff's release of any lien and right to claim a lien for work for NEI on the Project.

58.     Pinto and Plaintiff Zajkowski complied with the directions from the NEI PM and the NEI PE, maintaining and forwarding the work and compensation records NEI requested.

59.     On information and belief, NEI maintained the records for Plaintiffs forwarded to NEI.

8

ii.     **NEI Directed the Work, Hiring of New Workers, Maintenance of Payroll-Related Records, and Payment of Plaintiffs During Phase II**

60.     During Phase II, the NEI Superintendents and the NEI PM directed the type of work, the order of the tasks performed, the specific location of the work, and the amount of time to spend on each task that the Plaintiffs performed each week.

61.     During Phase II, the NEI Superintendents and the NEI PM directed Plaintiffs regarding work hours, including whether to work more than eight hours a day, work on Saturdays, and work Overtime Hours.

62.     During Phase II, the NEI Superintendents, NEI PM, and NEI PE directed Plaintiffs to recruit friends and relatives to work on the Project ("Recruited Workers").

63.     During Phase II, the NEI Superintendents, the NEI PM, and the NEI PE promised to pay the Recruited Workers for work on the Project.

64.     During Phase II, NEI hired the Recruited Workers to work on the Project.

65.     On information and belief, during Phase II, NEI purchased, rented, and provided equipment Plaintiffs required and used to perform their work on the Project, including, but not limited to, scaffolding, gang boxes, and taping tools.

66.     On information and belief, during Phase II, NEI purchased all of the materials Plaintiffs required and used to perform their work on the Project.

iii.    **NEI's First Payment to Plaintiffs**

67.     On information and belief, in or about early July, Pinto forwarded the Plaintiffs' Work Records for the weeks June 20 – July 3, 2021, to NEI.

68.     On information and belief, NEI approved the Work Records, including the hours worked by, and pay rates of, Plaintiffs.

69.     On or about July 9, 2021, Plaintiffs' regular pay date for the two-week period

9

ending on July 3, 2021, NEI provided a check to Pinto for the payment of the Plaintiffs who had worked on the Project during the two weeks ending on July 3, 2021.  The payment from NEI was based on straight-time payment of the Plaintiffs at their regular rates for the hours they had worked during the period.

70.    The NEI check was made out to Delta Drywall; however, Delta Drywall never received the funds.  Instead, at the direction of both NEI and Delta Drywall, Pinto brought the check to a check cashing company to obtain cash to pay the Plaintiffs for their work.  Defendant Villanueva called and approved the cashing of NEI checks and payment of Plaintiffs directly with the cash proceeds.  Pinto thereafter handed out the cash wages to the Plaintiffs from the NEI payment based on the hours the Plaintiffs worked times their straight-time regular hourly wage rates for the two weeks ending on July 3, 2021.

71.    As the NEI PM and the NEI PE had directed, Pinto obtained and forwarded to NEI the Signed Waivers from the Plaintiffs for the wage payments made from the NEI check. Each Signed Waiver set forth the Plaintiff's name and address; the amount of money the Plaintiff received; and a statement that, in consideration for the payment, the Plaintiff waived and released the Plaintiff's lien and right to claim a lien for "labor… furnished to NEI on the [Project]."

72.    The wage payments did not include Overtime Premium Pay for the Overtime Hours Plaintiffs had worked during the pay period.

73.    The wage payments were made in cash, with no paystubs provided or taxes withheld and, on information and belief, no payment of employer-side payroll taxes or toward statutory benefits and entitlements made by or on behalf of NEI or Delta Drywall.

74.    On information and belief, NEI and the Delta Defendants were aware that no Overtime Premium Pay had been paid, no paystubs had been provided, no taxes had been

withheld, no employer-side payroll taxes had been paid, and no employer payment had been made toward statutory benefits and entitlements with respect to the wages paid to Plaintiffs for the two-week pay period ending July 3, 2021.

      **iv.**    **NEI Made Second Payment Two Weeks Late**

75.    On information and belief, Pinto timely forwarded the Work Records to NEI as requested by NEI with respect to the work done by Plaintiffs on the Project during the two-week pay period ending on July 16, 2021.

76.    Despite having requested Plaintiffs to work; benefitting from Plaintiffs' work; promising to pay Plaintiffs for their work; receiving Work Records for Plaintiffs' work for the two-week period ending July 16, 2021; and knowing that the Delta Defendants were not paying Plaintiffs for their work on the Project, NEI failed to timely pay Plaintiffs for their work on the Project on their regular pay date of July 23, 2021.

77.    After NEI failed to pay Plaintiffs on the July 23, 2021, regular pay date, the NEI Superintendent, the NEI PM, and the NEI PE nonetheless continued to direct Plaintiffs to work on the Project.

78.    After NEI failed to pay Plaintiffs on the July 23, 2021, regular pay date, the NEI Superintendent, the NEI PM, and the NEI PE renewed NEI's promise to pay Plaintiffs for their work on the Project.

79.    After NEI failed to pay Plaintiffs on the July 23, 2021, regular pay date, Plaintiffs Jose C. Ruiz and Zajkowski complained to NEI that they and the other Plaintiffs working on the Project had not received wages that were due and that Plaintiffs would stop working on the Project if they did not get paid.

80.    On August 6, 2021, NEI finally sent a check for payment of Plaintiffs' wages for

the two-week period ending July 16, 2021.

81.     The NEI payment was based on the straight-time payment of the Plaintiffs at their regular rates for the hours they had worked during the period.

82.     Soon after receiving the NEI check, again as directed by NEI and approved by the Delta Defendants, Pinto cashed the check, paid wages to the Plaintiffs in cash, obtained Signed Waivers from the Plaintiffs for the payments, and forwarded the Signed Waivers to NEI.

83.     Again, the payments for the two-week period ending July 16, 2021, did not include Overtime Premium Pay for the Overtime Hours Plaintiffs had worked during the pay period.

84.     Again, the payments were made in cash, with no paystubs provided or taxes withheld and, on information and belief, no payment of employer-side payroll taxes or toward statutory benefits and entitlements by or on behalf of NEI or Delta Drywall.

85.     On information and belief, again NEI and the Delta Defendants were aware that no Overtime Premium Pay had been paid, no paystubs had been provided, no taxes had been withheld, and no employer-side payroll taxes or payments toward statutory benefits and entitlements had been paid with respect to the wages paid to Plaintiff for the two-week pay period ending July 16, 2021.

**v.     Defendants Failed To Pay Plaintiffs For Final Five Weeks Plaintiffs Worked**

86.     After the late payment, through Plaintiffs' last day on the Project on or about August 21, 2021, NEI continued to direct Plaintiffs to work on the Project and continued to promise to pay Plaintiffs for such work on the Project.

87.     After the late payment, Plaintiffs, believing they would be paid for their work, worked on the Project through August 21, 2021.

88.     After the late payment, NEI continued to request that some Plaintiffs work Overtime Hours, and some Plaintiffs continued to work Overtime Hours, on the Project.

89.     Even after the late payment, NEI continued to hire additional Plaintiffs to work on the Project and continued to promise to pay newly hired Plaintiffs for their work on the Project.

90.     On information and belief, Work Records were timely forwarded to NEI at NEI's request.

91.     Nonetheless, despite having requested Plaintiffs to work; benefitting from Plaintiffs' work; promising to pay Plaintiffs for their work; receiving Work Records for the workweeks ending July 24, July 31, August 7, August 14, and August 21, 2021; and knowing that the Delta Defendants were not paying Plaintiffs for their work on the Project, neither NEI nor the Delta Defendants paid Plaintiffs for their work for these five weeks of the Project.

92.     On information and belief, Defendant Rettman was aware of and approved or ratified NEI's failure to pay Plaintiffs for their work on the Project during the workweeks ending July 24, July 31, August 7, August 14, and August 21, 2021.

### vi.     Retaliation After Plaintiffs Complain about Non-payment of Wages and Threaten to File a Mechanic's Lien

93.     After Defendants failed to timely pay Plaintiffs for their work on the Project, Plaintiff Jose C. Ruiz complained to the NEI Superintendent and Plaintiff Zajkowski complained to the NEI PM and the NEI PE, that NEI owed them and the other Plaintiffs working on the Project their wages.

94.     On or about August 10, 2021, a subset of Plaintiffs sent a letter to Pennrose, the Department of Housing and Community Development ("DHCD"), Blue Hub Capital, and Citizens Bank notifying these entities that the Plaintiffs had not been paid wages due for work on the Project and indicating they would file a mechanic's lien if they were not paid wages owed

under Massachusetts wage laws ("Plaintiffs' Wage Complaint Letter").

95.    In Plaintiffs' Wage Complaint Letter, the Plaintiffs warned that the wages owed were subject to mandatory trebling.

96.    On information and belief, the NEI Defendants were notified of the contents of and/or given a copy of Plaintiffs' Wage Complaint Letter soon after the letter was sent.

97.    On information and belief, after the NEI Defendants learned of the Plaintiffs' Wage Complaint Letter, the NEI PM suggested that, as a result of the complaint, NEI would no longer pay Plaintiffs for any work on the Project.

98.    After receiving the Plaintiffs' Wage Complaint Letter, the NEI Defendants refused to pay wages due to Plaintiffs for hours they worked on the Project.

99.    As a result of the NEI Defendants' refusal to pay the Plaintiffs for their work on the Project, some Plaintiffs were forced to leave the Project to find other work.

100.    On August 21, 2021, less than two weeks after receiving the Plaintiffs' Wage Complaint Letter and soon after complaints by Plaintiffs Jose C. Ruiz and Zajkowski on behalf of themselves and all Plaintiffs working on the Project (together, "Plaintiffs' Wage Complaints"), the NEI Defendants terminated all Plaintiffs working on the Project and hired replacement workers to complete the Project and work on the related Julia Bancroft Project that was just getting started.

101.    At the time the NEI Defendants terminated and replaced the Plaintiffs, the Plaintiffs had successfully completed approximately 95% of the work they had been hired to do on the Project.

102.    At the time the NEI Defendants terminated and replaced the Plaintiffs, the Plaintiffs had been scheduled to perform the layout, taping, framing, drywalling, and other

14

similar construction work on the Julia Bancroft Project.

103.    As a result of the Plaintiffs' Wage Complaints, the NEI Defendants terminated the Plaintiffs, preventing them from completing the final 5% of the Project and from working on the recently-started Julia Bancroft Project and other future projects.

104.    As a result of Plaintiffs' Wage Complaints, the Plaintiffs were suddenly and unexpectedly left without pay and jobs to support their families, which caused Plaintiffs emotional distress, anxiety, inconvenience, and harm to their families' finances.

105.    On or about August 30, 2021, NEI agreed to pay the eleven Plaintiffs who sent Plaintiffs' Wage Complaint Letter to Pennrose some of the wages owed to them for their work on the Project.

106.    Defendants refused to make any other payments to any Plaintiffs despite requests from Pinto, Plaintiff Zajkowski, and others that they make such payments.

**C.      Complaints Filed with Attorney General**

107.    On October 19 and 20, 2021, Plaintiffs Jose C. Ruiz, Cruz Eduardo Ruiz, and Lukasz Zajkowski filed wage complaints with the Attorney General of Massachusetts on behalf of themselves and all similarly-situated co-workers, alleging that Delta Drywall, NEI, Villanueva, and Rettman violated the law by actions including failing to pay them Overtime Premium Pay, failing to pay them wages for all hours they worked, misclassifying them as independent contractors, failing to provide them with earned sick time, and retaliating against them for complaints employees made about non-payment of wages.

108.    On October 20, 2021, the Attorney General issued Private Right of Action Letters to each of the named Plaintiffs authorizing them to pursue their claims through a private civil lawsuit.

**D.**     **Plaintiffs Still Have Not Been Paid**

109.     To date, Defendants still have not paid Plaintiffs Overtime Premium Pay for Overtime Hours, all wages for time worked, damages resulting from misclassification as independent contractors, payment for earned sick leave, lost back wages, or payment for other damages resulting from Defendants' failure to comply with applicable wage and hour laws in connection with Plaintiffs' work on the Project.

**COLLECTIVE AND CLASS ACTION ALLEGATIONS**

**A.**     **Collective Action Allegations for FLSA Claims**

110.     Named Plaintiffs Jose C. Ruiz, Cruz Eduardo Ruiz, and Lukasz Zajkowski ("Representative Plaintiffs"), bring collective action claims pursuant to the FLSA, 29 U.S.C. § 216(b), on behalf of themselves and two subgroups of similarly-situated employees: (i) Plaintiffs who worked Overtime Hours on the Project performing layout, taping, framing, drywall, or other similar construction tasks but were not paid Overtime Premium Pay ("Overtime Collective Plaintiffs") and (ii) Plaintiffs who worked on the Project performing layout, taping, framing, drywall, or other similar construction tasks but were not paid at least the minimum wage required by the FLSA ("Federal Minimum Wage") for all such time they worked (the "Minimum Wage Collective Plaintiffs").

111.     The Representative Plaintiffs are similarly situated to both the Overtime Collective Plaintiffs and Minimum Wage Collective Plaintiffs, as Defendants followed policies and practices of (i) failing to pay all Representative Plaintiffs and all other Overtime Collective Plaintiffs Overtime Premium Pay for Overtime Hours and (ii) failing to pay all Representative Plaintiffs and all other Minimum Wage Collective Plaintiffs at least the Federal Minimum Wage for all time worked on the Project.

B.      **Class Action Allegations for Massachusetts Law Claims**

112.    Representative Plaintiffs Jose C. Ruiz, Cruz Eduardo Ruiz, and Lukasz Zajkowski bring claims on behalf of themselves and four overlapping subgroups of Plaintiffs (together, "Class Plaintiffs"): (i) the group of Plaintiffs who worked Overtime Hours on the Project performing layout, taping, framing, drywall, or other similar construction tasks but were not paid Overtime Premium Pay ("Overtime Class Plaintiffs"); (ii) the group of Plaintiffs who worked on the Project performing layout, taping, framing, drywall, or other similar construction tasks but were not paid wages for time they worked on the Project ("Unpaid Hours Class Plaintiffs"); (iii) all Plaintiffs who worked on the Project performing layout, taping, framing, drywall, or other similar construction tasks and were misclassified as independent contractors and not provided earned sick time ("Misclassification Class Plaintiffs"); and (iv) the group of Plaintiffs who worked on the Project performing layout, taping, framing, drywall, or other similar construction tasks and who were not paid and/or were terminated in retaliation for Plaintiffs' Wage Complaints ("Retaliation Class Plaintiffs").

113.    The number of Class Plaintiffs in each of the four classes, each of which includes more than 40 individuals, is so numerous that joinder of the Class Plaintiffs in each group is impracticable.

114.    For each of the four classes, there are common questions of law and fact related to the claims of all Class Plaintiffs in the class.

115.    With respect to the Overtime Class Plaintiffs, common questions include questions related to Plaintiffs' non-exempt status and Defendants' policies and practices of paying the Overtime Class Plaintiffs straight time or no wages for Overtime Hours.

116.    With respect to the Unpaid Hours Class Plaintiffs, common questions include questions related to Defendants' policies and practices of failing to pay all Unpaid Hours Class Plaintiffs any wages for one or more hours the Unpaid Hours Class Plaintiffs worked on the Project.

117.    With respect to the Misclassification Class Plaintiffs, common questions include questions related to Defendants' policies and practices of misclassifying the Misclassified Class Plaintiffs as independent contractors and refusing to provide earned paid sick leave to the Misclassified Class Plaintiff.

118.    With respect to the Retaliation Class Plaintiffs, common questions include whether the Defendants' actions in failing to pay the Retaliation Class Plaintiffs and in terminating the Retaliation Class Plaintiffs were in retaliation for the Plaintiffs' Wage Complaints.

119.    In addition, common legal and factual questions regarding Defendants' roles as direct and joint employers apply to the claims of all Class Plaintiffs in each of the four classes.

120.    For each of the four classes, the claims of the Representative Plaintiffs are typical of the claims of all members of the class.  Although the Representative Plaintiffs had somewhat varying hourly rates and worked different hours or weeks, they were subjected to the identical compensation policies which are at the heart of the claims of the Overtime Class Plaintiffs, the Unpaid Hours Class Plaintiffs, the Misclassification Class Plaintiffs, and the Retaliation Class Plaintiffs.  Specifically, the Representative Plaintiffs, like the similarly-situated Class Plaintiffs in each respective class, were denied Overtime Premium Pay for Overtime Hours they worked on the Project, were not paid for all hours they worked on the Project, were misclassified as

independent contractors and denied earned pay sick leave, and were not paid for hours worked and were terminated in retaliation for the Plaintiffs' Wage Complaints.

121.   For each of the four classes, the Representative Plaintiffs will fairly and adequately represent and protect the interests of the Class Plaintiffs.  Their claims for damages resulting from denial of Overtime Premium Pay, denial of pay for all hours worked, misclassification and denial of earned paid sick leave, and denial of pay and termination in retaliation for the Plaintiffs' Wage Complaints, are typical of the damages claims held by the rest of the members of the Class Plaintiffs in each respective class.

122.   The Representative Plaintiffs have no known conflicts with any of the Class Plaintiffs.

123.   The Representative Plaintiffs have retained counsel competent and experienced in complex class action and wage and hour litigation who will vigorously pursue this action for the benefit of all Class Plaintiffs.

124.   Class certification is appropriate because the questions of law and fact common to the each of the four classes predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

125.   The damages of many of the Class Plaintiffs in each of the four classes may be so small as to make the expense and burden of individual litigation impractical and redress of class members' harm impossible.

126.   This Court will have no difficulty managing this case as a class action.

127.   The Representative Plaintiffs are aware of no difficulty that will be encountered in the management of this litigation that would preclude its approval as a class action.

## CLAIMS FOR RELIEF

### COUNT I
### FAILURE TO PAY OVERTIME
### FAIR LABOR STANDARDS ACT, 29 U.S.C § 201 *et seq.*
### (On Behalf of Plaintiffs Jose C. Ruiz, Cruz Eduardo Ruiz, and Lukasz Zajkowski, individually and on behalf of all Similarly-Situated Overtime Collective Plaintiffs)

128.    Plaintiffs repeat and incorporate by reference all allegations above and below as if fully set forth here.

129.    The Representative Plaintiffs bring this claim individually and on behalf of all similarly-situated Overtime Collective Plaintiffs.

130.    On information and belief, during all relevant time, NEI and Delta Drywall each employed more than two employees and had at least $500,000 in annual business, and each was an enterprise engaged in commerce or in the production of goods for commerce, as defined by 29 U.S.C. § 201 *et seq*.

131.    During all relevant time, each Overtime Collective Plaintiff utilized goods shipped in interstate commerce in performing their work on the Project, and each engaged in interstate commerce, as defined by 29 U.S.C. § 201 *et seq*.

132.    During all relevant time, Defendants each suffered or permitted Overtime Collective Plaintiffs to work on the Project, as either a direct or joint employer.

133.    During all relevant time, each of the Defendants acted directly or indirectly in the interest of the Overtime Collective Plaintiffs' employer or employers under the FLSA and each were the Overtime Collective Plaintiffs' employer, as defined by 29 U.S.C. § 201 *et seq*.

134.    During all relevant time, the Overtime Collective Plaintiffs were hourly paid and were non-exempt under the FLSA.

135.    Pursuant to the FLSA, 29 U.S.C. § 207(a), during all relevant time, the

20

Defendants were required to pay Overtime Premium Pay to all Overtime Collective Plaintiffs for all Overtime Hours they worked on the Project.

136.    During all relevant time, the Defendants regularly followed a policy and practice of refusing to pay Overtime Premium Pay to the Overtime Collective Plaintiffs.

137.    The failure of the Defendants to pay Overtime Premium Pay to the Overtime Collective Plaintiffs violated the FLSA.

138.    The Defendants acted willfully or with reckless disregard as to their obligation to pay Overtime Premium Pay to the Overtime Collective Plaintiffs, and accordingly, the violation was willful for purposes of the FLSA, 29 U.S.C. §§ 255(a) and 260.

139.    The Defendants are jointly and severally liable to the Overtime Collective Plaintiffs under the FLSA for their failure to pay Overtime Premium Pay to the Overtime Collective Plaintiffs in an amount equal to such unpaid Overtime Premium Pay.

140.    The Defendants are also jointly and severally liable to the Overtime Collective Plaintiffs for liquidated damages on unpaid Overtime Premium Pay, as well as attorneys' fees, costs, interest, and all other relief deemed just and proper.

<u>COUNT II</u>
**FAILURE TO PAY MINIMUM WAGE**
**FAIR LABOR STANDARDS ACT, 29 U.S.C § 201 *et seq.***
**(On Behalf of Plaintiffs Jose C. Ruiz, Cruz Eduardo Ruiz, and Lukasz Zajkowski,**
**individually and on behalf of all Similarly-Situated Minimum Wage Collective Plaintiffs)**

141.    Plaintiffs repeat and incorporate by reference all allegations above and below as if fully set forth here.

142.    This claim is brought by the Representative Plaintiffs, individually and on behalf of all similarly-situated Minimum Wage Collective Plaintiffs.

143.    Pursuant to the FLSA, the Defendants were required to pay the Minimum Wage

Collective Plaintiffs at least the Federal Minimum Wage for all time that they worked on the Project each workweek.

144.    During all relevant time, the Defendants followed policies and practices of willfully and repeatedly failing to pay the Minimum Wage Collective Plaintiffs any wages for the time they worked on the Project for some entire weeks during the Project.

145.    During all relevant time, the Defendants willfully and repeatedly violated the provisions of the FLSA by failing to timely pay the Minimum Wage Collective Plaintiffs at least the Federal Minimum Wage for all time they worked on the Project.

146.    The Defendants are jointly and severally liable to the Minimum Wage Collective Plaintiffs under the FLSA for the Federal Minimum Wages that Defendants failed to pay the Minimum Wage Collective Plaintiffs for work they performed on the Project ("Unpaid Federal Minimum Wages").

147.    The Defendants are also jointly and severally liable to the Minimum Wage Collective Plaintiffs for liquidated damages on the Unpaid Federal Minimum Wages, as well as attorneys' fees, costs, interest, and all other relief deemed just and proper.

## COUNT III
## FAILURE TO PAY OVERTIME
## M.G.L. c. 151
**(On Behalf of Plaintiffs Jose C. Ruiz, Cruz Eduardo Ruiz, and Lukasz Zajkowski, individually and on behalf of all Similarly-Situated Overtime Class Plaintiffs)**

148.    Plaintiffs repeat and incorporate by reference all allegations above and below as if fully set forth here.

149.    The Representative Plaintiffs bring this claim individually and on behalf of all similarly-situated Overtime Class Plaintiffs.

150.    During all relevant time, the Defendants were "employers" of the Overtime Class

Plaintiffs within the meaning of M.G.L. c. 151.

151.    During all relevant time, the Defendants were each a direct or joint employer of the Overtime Class Plaintiffs within the meaning of M.G.L. c. 151.

152.    During all relevant time, the Overtime Class Plaintiffs were "employees" of the Drywall Defendants and NEI within the meaning of M.G.L. c. 151 and were not exempt from the Overtime Premium Pay requirements, as described in M.G.L. c. 151, § 1A.

153.    During all relevant time, Defendants employed the Unpaid Hours Class Plaintiffs within the meaning of M.G.L. c. 151.

154.    Under M.G.L. c. 151, § 1A, the Defendants were required to pay the Overtime Class Plaintiffs Overtime Premium Pay for all Overtime Hours.

155.    While employed by the Defendants on the Project, the Overtime Class Plaintiffs worked Overtime Hours in one or more workweeks.

156.    The Defendants followed a policy and practice of failing to pay the Overtime Class Plaintiffs Overtime Premium Pay for Overtime Hours on the Project, in violation of M.G.L. c. 151, § 1A.

157.    The Defendants are jointly and severally liable to the Overtime Class Plaintiffs under M.G.L. c. 151 for their failure to pay Overtime Premium Pay to the Overtime Class Plaintiffs in an amount equal to such unpaid Overtime Premium Pay.

158.    The Defendants are also jointly and severally liable to the Overtime Class Plaintiffs under M.G.L. c. 151 for liquidated treble damages on unpaid Overtime Premium Pay, as well as attorneys' fees, costs, interest, and all other relief deemed just and proper.

<u>COUNT IV</u>
**FAILURE TO PAY WAGES**
**M.G.L. c. 149, §§ 148 & 150**
**(On Behalf of Plaintiffs Jose C. Ruiz, Cruz Eduardo Ruiz, and Lukasz Zajkowski,**
**individually and on behalf of all Similarly-Situated Unpaid Hours Class Plaintiffs)**

159.    Plaintiffs repeat and incorporate by reference all allegations above and below as if fully set forth here.

160.    The Representative Plaintiffs bring this claim individually and on behalf of all similarly-situated Unpaid Hours Class Plaintiffs.

161.    During all relevant time, Defendants were "employers" of the Unpaid Hours Class Plaintiffs within the meaning of M.G.L. c. 149.

162.    During all relevant time, Defendants were each a direct employer or a joint employer of Unpaid Hours Class Plaintiffs within the meaning of M.G.L. c. 149.

163.    During all relevant time, the Unpaid Hours Class Plaintiffs were "employees" of Defendants within the meaning of M.G.L. c. 149.

164.    During all relevant time, Defendants employed the Unpaid Hours Class Plaintiffs within the meaning of M.G.L. c. 149.

165.    Under M.G.L. c. 149, § 148, Defendants were required to pay the Unpaid Hours Class Plaintiffs all wages due within six or seven days after the termination of the pay period in which such wages were earned.

166.    Defendants followed a policy and practice of failing to always pay the Unpaid Hours Class Plaintiffs within six or seven days after the termination of the pay period in which such wages were earned for work on the Project, in violation of M.G.L. c. 149, § 148.

167.    Defendants followed a policy and practice of failing to pay the Unpaid Hours Class Plaintiffs any wages for many of the hour they worked on the Project.

168.    Defendants are jointly and severally liable to the Unpaid Hours Class Plaintiffs under M.G.L. c. 149, §§ 148 & 150 for their failure to pay the Unpaid Hours Class Plaintiffs all wages due within the legally-required time frames for their work on the Project.

169.    Defendants are also jointly and severally liable to the Unpaid Hours Class Plaintiffs under M.G.L. c. 149, §§ 148 & 150 for liquidated treble damages on the amounts due as a result of Defendants' failure to timely pay all wages due for time worked on the Project, as well as attorneys' fees, costs, interest, and all other relief deemed just and proper.

<u>**COUNT V**</u>
**MISCLASSIFICATION AS INDEPENDENT CONTRACTORS**
**M.G.L. c. 149, §§ 148B & 150**
**(On Behalf of Plaintiffs Jose C. Ruiz, Cruz Eduardo Ruiz, and Lukasz Zajkowski,**
**individually and on behalf of all Similarly-Situated Misclassification Class Plaintiffs)**

170.    Plaintiffs repeat and incorporate by reference all allegations above and below as if fully set forth here.

171.    The Representative Plaintiffs bring this claim individually and on behalf of all similarly-situated Misclassification Class Plaintiffs.

172.    The Misclassification Class Plaintiffs performed work on behalf of Defendants on the Project.

173.    The Misclassification Class Plaintiffs performed construction work for Defendants, which was work in the usual course of, and essential to, Defendants' construction and general contracting businesses.

174.    Defendants controlled and directed all aspects of the work the Misclassification Class Plaintiffs performed, including where to work each day, when to arrive and leave, and the type of work to perform at the jobsite each day.

175.    While employed by Defendants, the Misclassification Class Plaintiffs were not engaged in an independent business.

176.    Defendants misclassified the Misclassification Class Plaintiffs as independent contractors despite the Misclassification Class Plaintiffs being employees of Defendants.

177.    Defendants failed to make contributions to Social Security, Medicare, unemployment insurance, and the Massachusetts paid family and medical leave program on behalf of the Misclassification Class Plaintiffs; failed to pay workers' compensation premiums on behalf of the Misclassification Class Plaintiffs; and failed to comply with tax withholding obligations in connection with wages paid to the Misclassification Class Plaintiffs.

178.    The Misclassification Class Plaintiffs suffered damages as a result of Defendants' misclassification of them as independent contractors, including, but not limited to, being responsible for higher taxes, losing out on credit toward Social Security and Medicare, facing obstacles accessing unemployment insurance and paid family and medical leave, and suffering financial and physical damages resulting from the denial of workers' compensation insurance coverage.

179.    Defendants are jointly and severally liable to the Misclassification Class Plaintiffs in an amount equal to the value of the damages they suffered as a result of Defendants' misclassification of them as independent contractors ("Misclassification Damages").

180.    Defendants are also jointly and severally liable to the Misclassification Class Plaintiffs for liquidated damages on the Misclassification Damages, as well as attorneys' fees, costs, interest, and all other relief deemed just and proper.

26

## COUNT VI
**VIOLATION OF MASSACHUSETTS EARNED SICK TIME LAW**
**M.G.L. c. 149, §§ 148C & 150**
**(On Behalf of Plaintiffs Jose C. Ruiz, Cruz Eduardo Ruiz, and Lukasz Zajkowski,**
**individually and on behalf of all Similarly-Situated Misclassification Class Plaintiffs)**

181.    Plaintiffs repeat and incorporate by reference all allegations above and below as if fully set forth here.

182.    The Representative Plaintiffs bring this claim individually and on behalf of all similarly-situated Misclassification Class Plaintiffs.

183.    During all relevant time, Defendants were "employers" of the Misclassification Class Plaintiffs within the meaning of M.G.L. c. 149, § 148C and the regulations promulgated by the AG pursuant thereto.

184.    During all relevant time, Defendants were each a direct employer or a joint employer of the Misclassification Class Plaintiffs within the meaning of M.G.L. c. 149, § 148C and the regulations promulgated by the AG pursuant thereto.

185.    During all relevant time, Defendants were "employers of eleven or more employees" within the meaning of M.G.L. c. 149, § 148C and the regulations promulgated by the AG pursuant thereto.

186.    During all relevant time, the Misclassification Class Plaintiffs were "employees" of Defendants within the meaning of M.G.L. c. 149, § 148C and the regulations promulgated by the AG pursuant thereto.

187.    During all relevant time, Defendants employed the Misclassification Class Plaintiffs within the meaning of M.G.L. c. 149, § 148C and the regulations promulgated by the AG pursuant thereto.

188.    Under M.G.L. c. 149, § 148C and the regulations promulgated by the AG

pursuant thereto, Defendants were required to provide a hard or electronic copy of a notice of

M.G.L. c. 149, § 148C prepared by the AG to the Misclassification Class Plaintiffs or include

such notice in an employee manual or handbook provided to them.

189.    During all relevant time, Defendants followed a policy and practice of failing to

either provide the Misclassification Class Plaintiffs the required hard or electronic copy of a

notice of the M.G.L. c. 149, § 148C prepared by the AG or include such notice in an employee

manual or handbook provided to them.

190.    During all relevant time, Defendants followed a policy and practice of failing to

allow the Misclassification Class Plaintiffs to accrue earned sick time in violation of M.G.L. c.

149, § 148C.

191.    During all relevant time, Defendants followed a policy and practice of failing to

pay the Misclassification Class Plaintiffs for time off taken in accordance with the provisions of

M.G.L, c. 149, § 148C and the regulations promulgated by the AG thereunder for which the

Plaintiffs would have had earned paid sick time had Defendants complied with the law, in

violation of M.G.L. c. 149, § 148C.

192.    Defendants are jointly and severally liable to the Misclassification Class Plaintiffs

under M.G.L. c. 149, §§ 148C & 150 for Defendants' failure to (i) properly notify the

Misclassification Class Plaintiffs of their rights to earn and use paid sick leave, (ii) allow the

Misclassification Class Plaintiffs to earn paid sick leave, and (iii) pay the Misclassification Class

Plaintiffs for leave they took that would have qualified for paid sick leave had Defendants

complied with the law.

193.    Defendants are also jointly and severally liable to the Misclassification Class

Plaintiffs under M.G.L. c. 149, §§ 148C & 150 for liquidated treble damages on the amounts due

as a result of Defendants' failure to comply with M.G.L. c. 149, §§ 148C and the regulations

promulgated by the AG thereunder, as well as attorneys' fees, costs, interest, and all other relief

deemed just and proper.

**COUNT VII**
**UNLAWFUL RETALIATION**
**M.G.L. c. 149, §§ 148A & 150**
**(On Behalf of Plaintiffs Jose C. Ruiz, Cruz Eduardo Ruiz, and Lukasz Zajkowski,**
**individually and on behalf of all Similarly-Situated Retaliation Class Plaintiffs)**

194.    Plaintiffs repeat and incorporate by reference all allegations above and below as if

fully set forth here.

195.    The Representative Plaintiffs bring this claim individually and on behalf of all

similarly-situated Retaliation Class Plaintiffs.

196.    During all relevant time, the Defendants were "employers" of the Retaliation

Class Plaintiffs within the meaning of M.G.L. c. 149.

197.    During all relevant time, the Defendants were each a direct employer or a joint

employer of the Retaliation Class Plaintiffs within the meaning of M.G.L. c. 149.

198.    During all relevant time, the Retaliation Class Plaintiffs were "employees" of the

Defendants within the meaning of M.G.L. c. 149, § 148A.

199.    Under M.G.L. c. 149, § 148A, "No employee shall be penalized by an employer

in any way as a result of any action on the part of an employee to seek his or her rights under the

wages and hours provisions of this chapter."

200.    The Defendants penalized the Retaliation Class Plaintiffs by refusing to pay them

wages for their work on the Project in retaliation for Plaintiffs' Wage Complaints pursuant to

which employees were seeking their rights under the wages and hours provisions of M.G.L. c.

149.

201.    The Defendants penalized the Retaliation Class Plaintiffs by suddenly terminating all Retaliation Class Plaintiffs working on the Project and barring them from working on the Julia Bancroft Project and other projects in retaliation for Plaintiffs' Wage Complaints pursuant to which employees were seeking their rights under the wages and hours provisions of M.G.L. c. 149.

202.    The Defendants are jointly and severally liable to the Retaliation Class Plaintiffs under M.G.L. c. 149, §§ 148A & 150 for lost back wages and front wages resulting from the Defendants' failure to pay Retaliation Class Plaintiffs for work on the Project, termination of the Retaliation Class Plaintiffs, and refusal to allow the Retaliation Class Plaintiffs to work on the Julia Bancroft Project and other projects in retaliation for Plaintiffs' Wage Complaints.

203.    The Defendants are also jointly and severally liable to the Retaliation Class Plaintiffs under M.G.L. c. 149, §§ 148A & 150 for liquidated treble damages on the amounts due as a result of Defendants' retaliation against the Retaliation Class Plaintiffs in violation of M.G.L. c. 149, §§ 148A, as well as emotional distress damages, attorneys' fees, costs, interest, and all other relief deemed just and proper.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs Jose Ruiz, Cruz Eduardo Ruiz, and Lukasz Zajkowski, individually and on behalf of similarly-situated employees, respectfully request as follows:

A.    That Defendants be summoned to appear and answer this Complaint;

B.    For an order of this Honorable Court entering judgment in their favor against Defendants, jointly and severally, for their actual economic damages and non-economic damages in an amount to be determined at trial;

C.    For liquidated double and treble damages;

D.      For their attorneys' fees, costs, and pre-and post-judgment interest; and

E.      For such other and further relief, including, but not limited to, injunctive

relief, compensatory damages, and punitive damages, as this Court deems necessary, just

and proper.

> Respectfully submitted,
> PLAINTIFFS,
> JOSE C. RUIZ, CRUZ EDUARDO RUIZ,
> AND LUKASZ ZAJKOWSKI, individually
> and on behalf of similarly-situated
> employees,
> By Their Attorney,
>
> /s/ Chip Muller
> _____
> Chip Muller, Esq. (BBO #672100)
> Muller Law, LLC
> 47 Wood Avenue
> Barrington, RI 02806
> (401) 256-5171 (ph.)
> (401) 256-5025 (fax)
> chip@mullerlaw.com

## DEMAND FOR TRIAL BY JURY

Plaintiffs Jose C. Ruiz, Cruz Eduardo Ruiz, and Lukasz Zajkowski, individually and on behalf of all similarly-situated employees, by and through their attorney, demand a TRIAL BY JURY on all counts so triable.

> /s/ Chip Muller
> _____
> Chip Muller, Esq. (BBO #672100)

Dated:   October 21, 2021