UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOSE C. RUIZ, CRUZ EDUARDO RUIZ, and LUKASZ ZAJKOWSKI, Individually and on Behalf of All Similarly-Situated Employees<br>Plaintiffs,<br>v.<br><br>NEI GENERAL CONTRACTING, INC.; DELTA DRYWALL AND FRAMING LLC; JOSEF RETTMAN; AND DAVID ADAM VILLANUEVA,<br>Defendants. | CA No. 1:21-cv-11722-WGY |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE INCENTIVE AWARDS**

Plaintiffs Jose C. Ruiz, Cruz Eduardo Ruiz, and Lukasz Zajkowski (the "Class Representatives"), individually and on behalf of the members of the two classes certified by the Court on February 29, 2024 (Doc. 83) (together, "Class Members"), file this Memorandum in Support of Plaintiffs' Unopposed Motion for Attorneys' Fees, Costs and Service Incentive Awards, in conjunction with Plaintiffs' Assented-To Motion for Final Approval of Settlement and Memorandum in Support thereof ("Final Approval Memorandum" or "FAM") filed simultaneously herewith.

The parties entered into the Class Settlement Agreement on January 24, 2025 (the "Settlement Agreement" or "SA"),[1] which this Court preliminarily approved on January 27, 2025 ("Preliminary Approval Order") (Doc. 97). The Settlement Agreement provides that counsel for the Class Members ("Class Counsel") may request payment of attorneys' fees ("Attorneys' Fees") in an amount up to $148,750, or 35% of the Gross Settlement Amount, reasonable costs and expenses of Class Counsel ("Costs") in an amount up to $7,500, and service incentive payments

[1]A copy of the Settlement Agreement was attached as Ex. 1 to Plaintiffs' Memorandum of Law in Support of Their Assented-To Motion for Preliminary Approval of Settlement ("Preliminary Approval Memorandum") (Doc. 96-1).

of $3,500 for each of the three Class Representatives ("Service Incentive Awards," and together with Attorneys' Fees and Costs, "Other Payments"). SA, ¶ 7. In its Preliminary Approval Order, the Court stated that it anticipated approving attorneys' fees of 33 1/3%, which equal $141,667 or $7,083 less than 35%. However, for the reasons stated herein, Class Counsel believes that its request for Attorneys' Fees of 35% is fair and reasonable and warranted in this case. Accordingly, by this Motion, consistent with the Settlement Agreement, Class Counsel requests approval for payment of $148,750 in Attorneys' Fees, $6,627 in Costs, and $3,500 in Service Incentive Awards to each of the three Class Representatives (together, "Requested Other Payments").

As detailed below, (i) Class Counsel performed an extensive amount of work in this matter and achieved a beneficial result for the Class Members, including a near-total recovery of estimated alleged damages, including liquidated damages, for Class Members who submitted claim forms, assuming the Court approves the Requested Other Payments (and more than their total estimated damages if the Court reduces the Attorneys' Fees award); (ii) the Costs reflect reasonable and necessary amounts spent pursuing this litigation; and (iii) the Class Representatives each worked on this matter for over three years, investing numerous hours and providing invaluable information to the benefit of all Class Members.

The requests here are within the range of reasonableness for wage and hour cases of this kind and should be approved.

## I. THE COURT SHOULD APPROVE THE REQUESTED ATTORNEYS' FEES

### A. Legal Standard for Assessing Attorneys' Fees

There are generally two methods for awarding attorneys' fees from a common fund: (i) percentage of fund and (ii) lodestar. The First Circuit has endorsed the percentage of fund method for determining the reasonableness of attorneys' fees requests. See In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig., 56 F.3d 295, 306-308 (1st Cir. 1995) (approving

percentage of fund method); see also In re Lupron Marketing & Sales Practices Litig., MDL No. 1430, No. 01-CV-10861, 2005 U.S. Dist. LEXIS 17456, *10 (D. Mass. Aug. 17, 2005) (noting the First Circuit's acknowledgment of the advantages to the percentage method, specifically that it is less burdensome to administer, it reduces the possibility of collateral disputes, it enhances efficiency throughout the litigation, it is less taxing on judicial resources, and it better approximates the workings of the marketplace).

In determining whether the amount of a requested fee is reasonable, courts analyze multiple factors, including: (1) the size of the fund created and the extent of the benefit obtained; (2) the presence or absence of objections to the settlement and the proposed attorneys' fees; (3) the skill and efficiency of counsel; (4) the complexity and duration of the litigation; (5) financial risks to the attorneys; (6) the amount of time devoted to the case; and (7) the awards in similar cases. See In re TJX Companies Retail Sec. Breach Litig., 584 F. Supp. 2d 395, 401 (D. Mass. 2008); In re Relafen Antitrust Litig., 231 F.R.D. 52, 79 (D. Mass. 2005). All of these considerations support granting Class Counsel's request for Attorneys' Fees in this case.

### B. All Factors Weigh in Favor of Awarding Class Counsel the Requested Attorneys' Fees

#### 1. The Requested Fees are Reasonable in Relation to the Size of the Fund, the Number of Class Members who will Benefit from the Settlement, and the Extent of the Benefits Obtained

Class Counsel's work resulted in the total settlement amount of $425,000 ("Gross Settlement Amount"), no portion of which is subject to reversion. SA, ¶ 7(g). As described in the Final Approval Memorandum, Defendant NEI General Contracting, Inc. ("NEI") is paying the Gross Settlement Amount in addition to over $123,525 it paid toward Class Members' alleged unpaid wages through a settlement with the Department of Labor. FAM, Sec. II.C.

The Gross Settlement Amount minus the Other Payments approved by the Court ("Net

Settlement Amount") will be allocated to the Class Members who returned claim forms and did not opt out ("Participating Class Members") in accordance with the Settlement Agreement, as described in Plaintiffs' Final Approval Memorandum. SA, ¶ 7(c); FAM, Sec. III.B. If the Court approves the Requested Other Payments, the Net Settlement Amount will total approximately $259,125.[2] Declaration of Attorney Nancy Sheinberg ("Sheinberg Dec."), attached hereto as Exhibit A, ¶ 5.

Here, twenty Class Members returned claim forms and became Participating Class Members. Declaration of Scott Simpson ("Simpson Dec."), attached hereto as Exhibit B, ¶ 7. The 20 Participating Class Members represent 42% of the 48 Class Members, 57% of the 35 Class Members for whom physical addresses were initially located, and 67% of the Class Members to whom Notices were mailed that were not returned. Id., ¶ 8. These claim rates are higher than the typical rates for settlements. Id.

The challenging circumstances of contacting Class Members here further underscores that the number of Class Members who will benefit from the Settlement is substantial. Not only did defendants not possess contact information for the Class Members, but most Class Members are transient workers who did not own property or have permanent addresses. Most of the Class Members are recent immigrants, and many Class Members who could not be contacted worked on the Project for only a limited time without establishing any meaningful connection with co-workers. Sheinberg Dec., ¶ 6. Anticipating the difficulty of finding such former workers, the parties directed the Administrator to place a notice of the Settlement in a local Spanish newspaper in Lawrence, Massachusetts, aimed at notifying Class Members for whom no contact information could be identified. Simpson Dec. ¶ 5; Sheinberg Dec., ¶ 7. As described in the Final Approval Memorandum, contacting the Class Members required the concerted efforts of the Administrator,

[2] The Net Settlement Amount will increase if the Court approves a lower rate of Attorneys' Fees; if the Court approves only 33 1/3%, the Net Settlement Amount will increase to approximately $266,205. Sheinberg Dec. ¶ 5.

Class Counsel, and the Class Representatives. FAM, Sec. III.E, n. 6.

Significantly, the 20 Participating Class Members include many Class Members with the largest claims for their work on the Project. For example, the Participating Class Members include the Class Members with the 11 biggest claims and 13 of the 15 biggest claims. Although representing only 42% of the Class Members, the Participating Class Member's initial allocations represent approximately 70% of the Net Settlement Amount based on the relative estimated damages of all Class Members.[3] Sheinberg Dec., ¶ 9.

If the Court approves the Settlement, the Participating Class Members will receive significant payouts, both in monetary terms and relative to their alleged Estimated Damages. If the Court approves the Requested Other Payments, after the reallocation of the Net Settlement Amount initially allocated for Class Members who did not return Claim Forms, the Participating Class Members will receive payments from the Net Settlement Amount in an average amount of approximately $12,955, with a median of approximately $9,850. When combined with the DOL Settlement Amount, the dollar values increase to an average of over $18,080, with a median of almost $13,155.[4] Sheinberg Dec., ¶ 11.

The Settlement also provides outstanding relief to the Participating Class Members relative to their best possible recovery. Class Counsel estimates that the Participating Class Members' aggregate damages, assuming they all prevail on all claims, equals approximately $64,120 for all Participating Class Members' alleged single damages ("Estimated Single Damages") and

[3] Notably, the settlement is non-reversionary, so, if the Court approves the Settlement, the 33% of the Net Settlement Amount initially allocated to Class Members who did not submit claims forms will be redistributed to Participating Class Members. SA, at ¶ 7(g); Sheinberg Dec., ¶ 10.

[4] If attorneys' fees are reduced to 33 1/3%, the average Settlement payments to Participating Class Members increases by about $355 to over $13,310 prior to factoring in the DOL Settlement Amount and approximately $18,435 after considering the DOL Settlement Amount. Sheinberg Dec., ¶ 11.

$262,785 for all Participating Class Members' alleged total damages, including liquidated damages ("Estimated Total Damages"), (after deducting the $102,505 DOL Settlement Payments for Participating Class Members' alleged unpaid wages which would reduce the Participating Class Members' damages at trial). If the Court approves the Requested Other Payments, the Settlement payments of $259,125 to the Participating Class Members will equal approximately 405% of their Estimated Single Damages and **99% of their Estimated Total Damages**.[5] Sheinberg Dec., ¶ 12.

Such recoveries are significantly greater than the range Courts have found reasonable in similar cases. See, e.g., Preston v. World Travel Holdings, Inc., C.A. No. 1:23-cv-12389, 2024 U.S. Dist. LEXIS 123879, at *11 (D. Mass. July 15, 2024) (finding a proposed settlement representing between 61.1% and 91.7% of estimated unpaid wages constitutes reasonable relief); Mongue v. The Wheatleigh Corp., C.A. No. 3:18-cv-30095, 2023 U.S. Dist. LEXIS 147961, at *30 (D. Mass. Aug. 23, 2023) (finding that payment of 129% of the disputed wages, with an average projected settlement check of approximately $5,672.53, to be "significant monetary relief" supporting a finding that the relief was adequate); Purinton v. Moody's Co- Worker Owned, Inc., No. 2:20-cv-00296, 2023 U.S. Dist. LEXIS 6949, at *3 (D. Me. Jan. 12, 2023) (approving settlement representing 69% of the total claimed unpaid wages for the class). The outstanding recovery compared with best possible outcomes at trial justify attorneys' fees on the higher end of the reasonable range. See Lawtone-Bowles v. City of N.Y., No. 16-cv-4240 (AJN) (OTW). 2021 U.S. Dist. LEXIS 69167, at *9 (S.D.N.Y. Apr. 8, 2021) (in an individual wage and hour case, the Plaintiff's receipt of 75% of her total possible recovery, and the significant time and labor required

[5] If the Court reduces the Attorneys' Fees to 33 1/3%, the Settlement payments of $266,205 will represent approximately 415% of the Estimated Single Damages and **more than the full amount (over 101%)** of their Estimated Total Damages. Sheinberg Dec., ¶ 12.

of Counsel to obtain such result, justified attorneys' fees well above the one-third amount commonly awarded).

Further, the Participating Class Members are receiving relief without incurring the expense, time, and risk of a trial or, with the exception of the Class Representatives, having to respond to any written discovery or sit for depositions.

The results achieved in this settlement are excellent and support approval of the requested fees.

**2. The Absence of Objections to the Attorneys' Fees Favors Granting Class Counsel's Attorneys' Fees Request**

The Court-approved Notice of Class Action Settlement ("Notice") sent to Class Members explained that Class Counsel would seek $148,750 in attorneys' fees to be paid from the $425,000 settlement fund. See Notice, Sec. VI (Doc No. 96-1, Ex. 1). No Class Members objected to the Settlement or opted out. No Class Members objected to the requested fees. Simpson Dec., ¶ 9. Accordingly, this factor clearly weighs in favor of the fees requested.

**3. This Case was Efficiently Litigated and Settled by Experienced Counsel**

Class Counsel have experience and success in prosecuting and settling federal and state wage and hour claims and are well-versed in the issues and how to evaluate the claims negotiated in this Settlement on behalf of the Class Members. See Declaration of Chip Muller, ("Muller Dec."), attached hereto as Exhibit C, ¶ 4. Attorney Muller is a graduate of the University of North Carolina School of Law and was admitted to the Massachusetts Bar in 2007; he is also a member of the state Bars of Rhode Island and Connecticut and is admitted to practice in federal courts in Massachusetts, Rhode Island, and Connecticut, as well as the U.S. Circuit Court of Appeals for the First Circuit. Id. at ¶ 5. Attorney Muller has been practicing law for over eighteen years and has been the principal of his own law firm since 2009. Id. He has worked in the field of

employment law since he started practicing law and has considerable experience representing employees in suits against their employers. Id. at ¶ 6. Attorney Muller also has experience as both class counsel and defense counsel in other class and collective action wage and hour suits. Id. at ¶ 7. Attorney Muller, who has conducted over 15 trials and arbitrations, has obtained favorable results for his clients, at both trial and through settlement. Id. at ¶ 8. Attorney Muller was selected to Super Lawyers in 2023, 2024, and 2025, and selected to "Rising Stars" by Super Lawyers in 2017. He was chairman of the Rhode Island Bar Association's Labor & Employment Committee for approximately five years, is a member of the National Employment Lawyers Association and the Massachusetts Employment Lawyers Association, and has been a member of the American Bar Association's employment law section. Id. at ¶ 9. In addition to his work representing clients, Attorney Muller has authored articles, given presentations, and taught continuing legal education classes on various topics related to employment law. Id. at ¶ 10.

Attorney Muller enlisted the assistance of Muller Law attorney Nancy Sheinberg to take the lead in prosecuting this action. Attorney Sheinberg is an experienced attorney with more than 23 years of practice. She earned her law degree from Harvard Law School in 1992. Sheinberg Dec., ¶ 13. After law school, Attorney Sheinberg worked as a judicial clerk for the Honorable Ronald Lagueux of the United States District Court for the District of Rhode Island ("US DRI"). Id., ¶ 14. Attorney Sheinberg was admitted to practice law in Texas in 1992, where she practiced at Baker & Botts LLP, one of the preeminent law firms in the country, from the end of her clerkship until 1997. Id., ¶ 15. After taking time off, Attorney Sheinberg was admitted to the Bar of Rhode Island in 2007, where she again worked as a judicial clerk for the US DRI for many years. Id., ¶ 16. Attorney Sheinberg joined Muller Law, LLC, in 2012, where she has worked on a variety of litigation cases, with a focus on employment law. Id., ¶ 17. She has successfully represented both employees and employers; she has worked on numerous wage and hour matters involving claims

by individual plaintiffs as well as multiple class and collective actions, achieving positive results for her clients. Id. Attorney Sheinberg was selected by the US DRI in 2024 to sit on the Court Advisory Council for the Court. Id., ¶ 18. Attorney Sheinberg is a member of the Rhode Island Bar Association's Labor & Employment Committee, has been a member of the National Employment Lawyers Association and the Massachusetts Employment Lawyers Association, and has taught CLE courses in the field of employment law. Id.

The firm's paralegals, who are also experienced in wage and hour litigation, assisted with discovery and handled various administrative aspects of the case. Muller Dec. at ¶ 11.

Class Counsel's experience and knowledge in wage and hour litigation coupled with its efforts in litigating this matter in a zealous manner resulted in a beneficial settlement for Class Members. Accordingly, this factor weighs in favor of granting Class Counsel's fees request.

**4. The Legal and Factual Issues are Difficult and Complex and Took Over Three Years to Settle**

The Massachusetts wage and hour laws at the center of this case involve complex issues of law and fact. The Class Members claim their straight wages were paid late or unpaid and that they were paid no overtime. The critical issue of proving Defendants' liability as the Class Members' direct and/or joint employers, which the NEI Defendants continue to vehemently deny, requires garnering facts from multiple sources and applying complicated and evolving law. Moreover, class counsel had to analyze the wage and hour data of the 48 Class Members, as well as their co-workers who were eventually determined to fall outside the class. See Tompkins v. Farmers Ins. Exch., No. 5:14-cv-3737, 2017 U.S. Dist. LEXIS 158478, at *23 (E.D. Pa. Sep. 27, 2017) (finding class counsel's analysis of class members' wage and hour data involved complex work that, in part, justified a 35% attorneys' fee award). The Class Members face added challenges here, where two defendants, Delta Drywall & Framing, LLC, and its principal, David Villanueva (together, the

"Delta Defendants"), are no longer viable sources of recovery after Defendant Villanueva filed for bankruptcy during the litigation. See Doc. 55; Sheinberg Dec., ¶ 19.

This case has been ongoing for over three-and-a-half years, settling only after all fact discovery was completed and the case was ready for trial. As described in more detail below in Section I.B.6, in litigating this case, Class Counsel has invested substantial time and effort, including, but not limited to, communicating, speaking, and meeting with the Named Plaintiffs and Class Members; conducting witness interviews; analyzing documents; drafting pleadings, discovery requests and responses, motions, and responses; conducting and defending depositions; reviewing voluminous timekeeping records; calculating damages; and negotiating the Settlement and the Settlement Agreement. Sheinberg Dec., ¶ 20.

Further, the expertise of the highly-qualified counsel for the Defendants magnified the legal challenges Class Counsel faced in pursing this action.

This factor also supports granting the Attorneys' Fees requested.

**5. Class Counsel Undertook Considerable Risk in Litigating This Case**

Wage-and-hour class actions are, by their very nature, complicated and time-consuming. Any lawyer or law firm undertaking representation of a group of employees must be prepared to make a tremendous investment of time, energy, and resources. In addition, Class Counsel took this case solely on a contingency fee basis, Muller Dec., ¶ 12, further justifying the Attorneys' Fees requested. See Hill v. State St. Corp., 2014 U.S. Dist. LEXIS 179702, at *46 (D. Mass. Nov. 26, 2014) ("The court considers this contingency risk in awarding attorneys' fees.").

Class Counsel also did not collect payment for costs and expenses up front from any Class Members; instead Class Counsel paid the costs out of its own funds. Muller Dec., ¶ 12. Due to the contingent nature of the fee arrangement, Class Counsel accepted a significant risk and made significant investments of time and money with the possibility of an unsuccessful outcome and no

fee or repayment of the costs of any kind. Id. Additionally, Class Counsel accepted this case despite concern that the Delta Defendants were financially insecure and might not be able to pay any damages. As it turned out, Class Counsel's fears in this respect materialized. Sheinberg Dec., ¶ 19. The bankruptcy of the Delta Defendants eliminated a potential source of recovery in this action, magnifying the risk to Class Counsel in prosecuting this case.

The wage statutes at issue here provide for the Court's award of attorneys' fees, in part, to provide an incentive for attorneys to take such cases. See Ferman v. Sturgis Cleaners, Inc., 481 Mass. 488, 495 (2019) (In affirming award of fees to plaintiffs after a settlement in which Plaintiffs received 70% of the wages they demanded, the Court emphasized, "The fee-shifting provisions [of the Massachusetts Wage Act] thus provide both a necessary incentive for attorneys to take such cases and a powerful disincentive for employers to withhold the wages in the first place."). Adequate compensation to counsel is required here, particularly given the risks counsel faced and the hours counsel invested in pursuing this case, to ensure the legislature's intent is realized.

The risk Class Counsel accepted to undertake this litigation on behalf of the Class Members provides additional justification for the requested Attorneys' Fees.

**6. Class Counsel Expended Extensive Time and Labor on Behalf of the Class Members**

Class Counsel has been working diligently on this case for over 3 ½ years, devoting well over 750 hours on this matter to date. Sheinberg Dec., ¶ 21 & Ex. 1. As described above and specifically identified in the timesheets summary attached as an exhibit to the Declaration of Attorney Sheinberg, since September 2021, Class Counsel has performed work including, but not limited to: (1) investigating the facts underlying the potential claims in the case; (2) conferring with the Class Representatives and other Class Members on numerous occasions, in person, on the phone, and via email and text; (3) interviewing witnesses; (4) performing public record searches

to uncover relevant facts about Defendants; (5) performing legal research regarding the claims and potential defenses and drafting the detailed Complaint; (6) meeting with Opt-in Plaintiffs and drafting consents to join the collective action; (7) legal research and drafting motions to extend service deadlines and serve by alternative methods; (8) reviewing Defendants' Answers to the Complaint and drafting Answers to the Delta Defendants' counterclaims; (9) engaging in the Rule 16 conference with Defense counsel and researching and drafting the Joint Statement; (10) preparing initial disclosures; (11) researching and drafting a response to the Delta Defendants' Motion for Joinder; (12) drafting extensive discovery requests; (13) reviewing thousands of pages of documents produced by Defendants; (14) analyzing potential damages based on timesheets; (15) drafting Rule 37 letters identifying deficiencies in Defendants' discovery responses and conferring with defense counsel regarding the same; (16) drafting motions to compel; (17) preparing for and conducting depositions; (18) responding to written discovery requests, preparing the Class Representatives for depositions, and defending their depositions; (19) researching the impact of Defendant Villaneuva's bankruptcy filing, filing Proof of Claims in the Bankruptcy Court, reviewing Villanueva's bankruptcy filings, attending the Bankruptcy proceedings, and examining Villanueva during a 341 Metting of Creditors conducted by the bankruptcy court; (20) researching and drafting a Motion for Class Certification and supporting affidavits, reviewing Defendants' Objection, drafting a Reply and supporting affidavits, and arguing in support of the Motion; (21) drafting a Notice of Class Action Certification, searching for contact information for Class Members, and distributing the notice; (22) conferring with the DOL regarding its investigation and assisting Class Members to receive their payments; (23) analyzing damages and drafting a demand letter; (24) researching and drafting a detailed pre-mediation statement; (25) attending an all-day mediation session at JAMS; (26) negotiating and editing the Settlement Agreement and accompanying proposed Notice; (27) researching and drafting the Preliminary

Approval Memorandum and declarations in support thereof; (28) calculating the estimates of each Class Member's Estimated Damages based on the formula in the Settlement Agreement for inclusion in Notices; (29) acting as a liaison with the Settlement Administrator on distribution of the Notices; (30) responding to numerous inquiries from Class Members regarding the settlement process and assisting Class Members with submitting claim forms; (31) calculating the settlement payments for Participating Class Members based on the formula in the Settlement Agreement; and (32) researching and drafting Plaintiffs' Assented-to Motion for Final Approval of Settlement and the instant motion and accompanying exhibits. Sheinberg Dec., ¶ 22 & Ex. 1, Time records.

Further, Class Counsel will continue to represent the interests of the Class Members to attain final approval of the Settlement as well as after the Settlement is approved to ensure that the terms and conditions of the Settlement are fully and completely satisfied, and all Participating Class Members receive their overdue compensation. Id., ¶ 21.

**7. The Requested Fees are Comparable to Fees Awarded in Similar Cases**

Although Courts frequently award fees equal to one third of a settlement fund, awards of 35% are within the reasonable range awarded by Courts in the First Circuit and around the country. See Carrington v. Greater Love Int'l, No. 23-2508, 2024 U.S. Dist. LEXIS 194991, at *7 n.2 (E.D. Pa. Oct. 28, 2024) ("Attorney's fees, using the percentage-of-recovery method, range from 19% to 45% of the settlement fund.") (citations omitted); Bacchi v. Mass. Mut. Life Ins. Co., C.A. No. 12-11280, 2017 U.S. Dist. LEXIS 184926, at *10 (D. Mass. Nov. 8, 2017) ("Although the First Circuit has not set a presumptive benchmark for percentage of fund awards, other courts in the Circuit have noted that such benchmark has been between twenty to thirty-five percent."); Tompkins, 2017 U.S. Dist. LEXIS 158478, at *24-28 (awarding 35% attorneys' fees equal to $271,250 in a wage and hour case, which, although "slightly higher" than the one-third used as a "benchmark … to prevent a windfall to counsel", was within the reasonable range awarded for

similar cases and was warranted for the 753 hours of work based on factors similar to the Grinnell Factors); In re Neurontin Mktg. & Sales Practices Litig., C.A. No. 04-10981, 58 F. Supp. 3d 167, 172 (D. Mass. Nov. 10, 2014) (citing a 2010 empirical study finding that percentage of fund fee awards were between 25% and 35% of the common fund); Mazola v. May Dep't Stores Co., No. 97CV10872-NG, 1999 WL 1261312, at *4 (D. Mass. Jan. 27, 1999) ("[I]n this circuit, percentage fee awards range from 20% to 35% of the fund. This approach mirrors that taken by the federal courts in other jurisdictions.").

Also, as detailed below, the 35% attorneys' fees are significantly less than lodestar value of the time and effort Class Counsel has expended on this action, which did not settle until just before trial, after the close of discovery and successful class certification. Sheinberg Dec. ¶ 25.

While the fund here will garner substantial rewards for the Participating Class Members, the relatively modest size of the fund, warrants an attorneys' fee award on the higher end of the spectrum. See Solis v. Orthonet LLC, No. 19-CV-4678, 2021 U.S. Dist. LEXIS 122512, at *8 (S.D.N.Y. June 30, 2021) ("Where the size of the fund is relatively small, courts typically find that requests for a greater percentage of the fund are reasonable."); In re Cendant Corp. Derivative Action Litigation, 232 F. Supp. 2d 327, 337 (D.N.J. 2002) ("As a general rule, as the size of a fund increases, the appropriate percentage to be awarded to counsel decreases."). The inverse relationship rests on the assumption that the increase in a recovery's size is often due to the size of the class and not the efforts of counsel. Id. The fund here is far from the "Mega" fund that require lower percentage awards to avoid a windfall to counsel; instead, the higher end of the range for attorneys' fees is justified to compensate counsel for the years of work on this matter.

As Class Counsel's requested fee award in this wage and hour action falls well within the range of fees awarded in similar cases, this factor strongly supports granting the requested Attorneys' Fees.

### 8. A cross-check using the lodestar method confirms that the requested fee is fair and reasonable

As alluded to above, Class Counsel's request for attorneys' fees is also reasonable under the lodestar cross-check analysis. In the First Circuit, "[t]he lodestar approach (reasonable hours spent times reasonably hourly rates, subject to a multiplier or discount for special circumstances, plus reasonable disbursements) can be a check or validation of the appropriateness of the percentage of funds fee, but is not required." In re Lupron Mktg. & Sales Practices Litig., 2005 U.S. Dist. LEXIS 17456, at *21 (quoting In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig., 56 F.3d at 307).

Class Counsel's work on this case between September 28, 2021, and April 28, 2025, has resulted in a lodestar amount for the work by attorneys through that date of over $525,000. Sheinberg Dec. at ¶ 23. This amount reflects a conservative recording of 752.8 hours of attorneys' time devoted to this case September 28, 2021, through April 28, 2025, at reasonable hourly rate of $700. Sheinberg Dec., ¶ 23; Muller Dec., ¶ 13 & 14. Based on the attorneys' experience, including their experience litigating wage and hour matters (see Section 1.B.2, supra), this hourly rate is reasonable. See e.g., Herb v. Homesite Grp. Inc., No. 1:22-cv-11416, 2024 U.S. Dist. LEXIS 135170, at *14 (D. Mass. July 31, 2024) (utilizing lodestar crosscheck in a wage and hour case with average attorneys' fees of $657 an hour)[6]; Davis v. Footbridge Eng'g Servs., LLC, No. 09CV11133-NG, 2011 WL 3678928, at *8-9 (D. Mass. Aug. 22, 2011) (approving rate of $650 for an attorney with ten years' experience in wage and hour matters almost 15 years ago); see cf., BioPoint, Inc. v. Dickhaut, No. 20-10118-RGS, 2023 U.S. Dist. LEXIS 118565, at *3 (D. Mass.

[6] Review of the Memorandum of Law in Support of the Joint Motion for Approval of FLSA Class Action Settlement in this case reveals specific hourly rates included $600 for an attorney with only 10 years of experience, $650 for an attorney with only 13 years of experience, and $850 for an attorney with 20 years of experience. Sheinberg Dec., ¶ 24. The hourly rates were supported by Declarations pointing to a survey for the period ending December 31, 2020, showing the median rates for Boston-area attorneys with between 16 and 20 years' experience was $773 per hour. Id.

July 11, 2023) (approving hourly rates two years ago of $839, $741, and $718 for counsel admitted in 2007, 2012, and 2013, respectively, in case involving trade secrets and 93A claims).

Further bolstering the reasonableness of the $700 hourly rate, Attorneys Muller and Sheinberg filed a motion last year for attorneys' fees based on the $700 per hour rate after a trial win in this Court on a §1983 due process claim for a wrongfully terminated municipal employee. Muller Dec., ¶ 15. The hourly rate was supported by affidavits of two long-time attorneys in the Massachusetts employment Bar, Robert Mantell and Elizabeth Rodgers. Id. While Attorney Mantell opined that a fair hourly rate for Attorney Muller was $600, Attorney Rodgers testified that a fair hourly rate for both Attorney Muller and Attorney Sheinberg was $773. Id. As a compromise, Plaintiffs proposed a rate of $700 per hour for both attorneys. Id. Although the case settled prior to a decision on the motion for attorneys' fees, the opinions of Attorneys Mantell and Rodgers support the hourly rate proposed for a lodestar cross-check here.[7] Id.

Class Counsel's lodestar of $526,960, compared to its requested fee of $148,750, yields a negative/inverse lodestar multiplier of approximately 0.28.[8] Sheinberg Dec., ¶ 25. This multiplier is significantly less than commonly-awarded lodestar multipliers in this District. See, e.g., Mooney v. Domino's Pizza, Inc., No. 1:14-cv-13723-IT, 2018 U.S. Dist. LEXIS 232959, at *4 (D. Mass. Jan. 23, 2018) (approving multiplier of 4.77); New England Carpenters Health Benefits Fund, 2009 WL 2408560, at *1 (D. Mass. Aug. 3, 2009) (multiplier of 8.3); In re Aspen Tech., Inc., Sec. Litig., No. 04-12375-JLT (D. Mass. Mar. 6, 2006) (multiplier of 6); In re Relafen Antitrust Litig., 231 F.R.D. at 82 (multiplier of 2.02). Moreover, the negative/inverse multiplier, strongly supports Class Counsel's request for fees at the higher end of the range of reasonable fees.

---

[7] Even if the Court were to use a rate closer to that suggested by Attorney Mantell, the lodestar cross-check would still be far greater than the fees Class Counsel is requesting in this case – still fully satisfying the cross-check. Sheinberg Dec., ¶ 25.

[8] The multiplier is even lower (0.26) if the Court awards only 33 1/3% in Attorneys' Fees. Sheinberg Dec., ¶ 26.

See Bryant v. Potbelly Sandwich Works, LLC, No. 1:17-cv-07638, 2020 U.S. Dist. LEXIS 21900, at *19-20 (S.D.N.Y. Feb. 4, 2020) ("Where a percentage fee is on the higher end of the range of reasonable fees but still represents a negative multiplier to the total lodestar, there is no real danger of overcompensation.") (inner quotations omitted).

For the reasons identified above, particularly the excellent results achieved in the litigation, the low inverse multiplier indicates that the requested Attorneys' Fees are remarkably fair and appropriate. The Court should approve the requested Attorneys' Fees.

## II. THE COURT SHOULD AWARD THE REQUESTED COSTS

"Lawyers who recover a common fund for a class are entitled to reimbursement of litigation expenses that were reasonably and necessarily incurred in connection with the litigation." Hill, 2014 U.S. Dist. LEXIS 179702, at *53. Class Counsel seeks reimbursement for reasonable and necessary out-of-pockets costs incurred in litigation expenses totaling $6,627.36, all of which Class Counsel advanced with the risk of no recovery.[9] Sheinberg Dec., ¶ 26 & Ex. 2, Summary of Costs. These requested costs equal only 1.5 % of the Settlement fund and are over 10% less than the maximum set forth in the Settlement Agreement. SA, ¶ 7(a); Sheinberg Dec., ¶ 26.

The Costs being requested, as set forth in the detailed Summary of Costs attached as an exhibit to the Declaration of Attorney Nancy Sheinberg, include expenditures for filing fees, service fees, deposition transcripts, translation services, postage, travel, and mediation. Sheinberg Dec., ¶ 27 & Ex. 2, Summary of Costs. These costs are of the type commonly reimbursable. See, e.g., Hill, 2014 U.S. Dist. LEXIS 179702, at *53-54 (approving payment from class action settlement fund of litigation expenses including court fees, travel fees, and copying costs as reasonable and necessary litigation costs). Further, the amount is even more reasonable as Class

[9] The costs apportioned to the individual retaliation settlements are not requested here. Sheinberg Dec., ¶ 26.

Counsel negotiated to have Defendants pay directly various costs commonly charged to the Settlement Fund, such as the cost of administration, publication of notice, and translation services. SA, ¶ 1(b) & 3; Sheinberg Dec., ¶ 28. No Class Member objected to the even-higher $7,500 in costs permitted by the Settlement Agreement. Simpson Dec., ¶ 9. The requested Costs are reasonable and were necessary to achieving the settlement. Sheinberg Dec., ¶ 27. The Costs should be approved.

## III. THE COURT SHOULD APPROVE THE REASONABLE REQUESTED SERVICE INCENTIVE AWARDS

The Settlement Agreement provides that service incentive awards of up to $3,500 will be paid to the three Class Representative. SA, ¶7(b). The Notice sent to the Class Members explained that Class Counsel would apply for service incentive awards for the three Representative who spent a significant amount of time and energy vigorously pursuing this matter on behalf of the Class Members, and no Class Member objected. Notice, Sec. VI; Simpson Dec., ¶ 9.

In class actions, "Courts 'routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation.'" In re Lupron Mktg. & Sales Practices Litig., 2005 U.S. Dist. LEXIS 17456, at *25 (citation omitted); see also Murray v. Grocery Delivery E-Servs. USA Inc., 55 F. 4th 340, 352-53 (1st Cir. 2022) ("Courts have blessed incentive payments for named plaintiffs in class actions for nearly a half century" in part because those plaintiffs "bear the brunt of litigation (document collection, depositions, trial testimony, etc.)").

In assessing service awards to class members, courts consider "the steps these individuals have taken to protect the interests of the class, the degree to which the class has benefited from these actions, the amount of time and effort they have expended in pursuing the litigation, … and any negative effects that they have risked." Scovil v. FedEx Ground Package Sys., Inc., No. 1:10-

cv-515-DBH, 2014 U.S. Dist. LEXIS 33361, at *23 (D. Me. Mar. 14, 2014). All of these factors support the requested award to the Class Service Members here.

The Class Representative here have been an invaluable resource to the class and to Class Counsel throughout the three-and-a-half years they have worked on this case. The Class Representatives spent numerous hours pursuing this case on behalf of the Classes, each meeting with Class Counsel repeatedly throughout the three and a half years, in person and via phone, email, and text, to discuss the facts of, and strategy for, the case. Sheinberg Dec., ¶ 29. Among other actions, the Class Representatives filed complaints with the Massachusetts Attorney General's office and Department of Labor; organized meetings between Class Counsel and Class Members at the outset of the litigation; worked with Class Counsel to draft the Complaint and contact witnesses; reviewed documents produced by defendants and advised Class Counsel regarding the same; produced documents and answered interrogatories in response to defendants' written discovery requests; worked with Class Counsel on declarations in support of Plaintiffs' Motion for Class Certification; and spent many hours working to locate fellow Class Member so they could be notified of the class action and be included in the Settlement. Sheinberg Dec., ¶ 30. As a result of their duties on behalf of the Class Members, the Class Representatives each missed work (and, as hourly workers, the wages they would have earned) to sit for depositions and attend the mediation. Id. Additionally, because of their efforts on behalf of the Class Members, and because they were represented by counsel, the Class Representatives were excluded from the payments made under the DOL Settlement. Id.

In addition, the Class Representatives took a risk of harm to their reputation and future employment. See Frank v. Eastman Kodak Co., 228 F.R.D. 174, 187 (W.D.N.Y. 2005) (recognizing that service payments are "particularly appropriate in the employment context" when the named plaintiff is a "former or current employee of the defendant . . . by lending his name to

the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers"). See also, Lauture v. A.C. Moore Arts & Crafts, Inc., No. 17-cv-10219-JGD, 2017 U.S. Dist. LEXIS 87928, at *5-9 (D. Mass. June 8, 2017) (emphasizing that employees "may not assert their rights due to fears of retaliation or of being 'blackballed' in [their] industry") (internal citation omitted). The willingness of the Class Representatives to step forward on behalf of the Class Members deserves to be rewarded.

Further, not only are the $3,500 service incentive awards justified by the substantial contributions the Class Representatives made on behalf of the class, but the awards also fall within the range of service payments approved in the First Circuit and around the country, particularly in wage and hour cases. See Murray, 55 F. 4th at 352-53 (rejecting challenge to awards between $2,000 and $10,000); Pallotta v. Univ. of Mass. Mem'l Med. Ctr., No. 4:22-cv-10361-ADB, 2023 U.S. Dist. LEXIS 215863, at *8 (D. Mass. Dec. 5, 2023) (approving $8,500 awards); Mongue, 2024 U.S. Dist. LEXIS 69928, at *5 (approving $5,000 awards); Mooney, 2018 U.S. Dist. LEXIS 232959, at *5 (approving service incentive payments of $10,000 each to two named plaintiffs); Scovil, 2014 U.S. Dist. LEXIS 33361, at * 6 ("[I]n wage and hour cases, . . . awards of $10,000 and $15,000 are not uncommon and on occasion reach $20,000, $30,000 and higher").

The requested $3,500 Service Incentive Awards to the Class Representatives are consistent with the Settlement Agreement and have not been objected to by any Class Member. The awards are justified, fair, and reasonable, and should be approved by the Court.

## IV. CONCLUSION

Class Counsel thoroughly and efficiently prosecuted this case for the benefit of the Class Members and will continue to represent their interests even after the settlement is approved to ensure that the terms and conditions of the settlement are fully and completely satisfied. The Costs were reasonable and necessary to effectuate the litigation and settlement. The substantial contributions and sacrifices of the Class Representatives in pursuing this action was critical to the settlement and the benefits it confers on the Class Members and justify the reasonable Service Incentive Awards requested for the Class Representatives.

For all of the foregoing reasons, Class Counsel respectfully requests this Court grant Plaintiffs' Unopposed Motion for Attorneys' Fees, Costs, and Service Incentive Awards:

(i) Approving Class Counsel's application for an award of Attorneys' Fees in the amount of $148,750 from the Gross Settlement Amount;

(ii) Approving Class Counsel's application for reimbursement of Costs of $6,627.36 from the Gross Settlement Amount; and

(iii) Approving the payment of Service Incentive Awards of $3,500 to each of the three Class Representatives from the Gross Settlement Amount.

If requested by the Court, Plaintiffs will file a proposed order in connection with the foregoing.

Respectfully submitted,

For the Plaintiffs,
By their Attorneys,

*/s/ Nancy Sheinberg*
Chip Muller, Esq. (BBO #672100)
Nancy Sheinberg, Esq. (pro hac vice)
MULLER LAW, LLC
47 Wood Avenue
Barrington, RI 02806
(401) 256-5171 (Tel)
chip@mullerlaw.com
nancy@mullerlaw.com

May 5, 2025

**RULE 7.1(a)(2) CERTIFICATION**

Pursuant to Rule 7.1(a)(2) of the Local Rules of the United States District Court for the District of Massachusetts, I hereby certify that I conferred with counsel for all represented defendants regarding the above motion and counsel agreed his clients do not oppose the relief requested.

/s/ *Nancy Sheinberg*
Muller Law, LLC
Counsel for Plaintiffs

**CERTIFICATE OF SERVICE**

I hereby certify that on this 5th day of May 2025, a true copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system, with a copy sent via electronic mail to all registered recipients and via first-class mail to all unregistered recipients.

/s/ *Nancy Sheinberg, Esq.*
Muller Law, LLC
Class Counsel